FÉLIX DEL LLANO & CÍA., Plaintiff and Appellant, *v.* PLAZUELA SUGAR CO., INC., Defendant and Appellee.

No. 7771. Argued June 16, 1939.—Decided November 15, 1939.

*E. Pérez Casalduc,* for the appellant. *G. Zeno Sama,* for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

Félix del Llano & Cía., a civil partnership, sued the corporation Plazuela Sugar Company, alleging ownership and possession of a lot of land situate in the Ward Garrochales, of the Municipality of Barceloneta, with an area of sixty-three cuerdas, devoted to pasture and truck gardening, with a house, bounding on the North with Flora Medina, on the South with the defendant, on the East with Pascasia López and on the West with the Heirs of Francisco Aguirre.

It then said that defendant owns a sugar mill and to carry cane thereto has laid railroad tracks, one of which crosses plaintiff's property, and that neither it nor anybody with authority has given its consent to the establishment of the right of way which is implied, which easement is worth more than a thousand dollars.

And finally alleged having required the defendant to remove the track, having been refused, for which reason it comes to the court praying for a judgment that orders said removal, with costs, disbursements and attorney's fees to the plaintiff.

After being summoned, the defendant answered with a general and specific denial of all the averments of the complaint and alleging also, as a special defense, the following:

That on May 21, 1909, Mr. Sotero Maisonet and his wife, then owners of the property described in the complaint, gave it the right to lay the aforesaid track for the use of its railroad for an indefinite time, and since that date it has been in possession of and constantly using said easement of railroad.

That according to said grant, the defendant, in good faith, laid its track in a permanent manner, not being hindered by anyone at anytime in its enjoyment thereof, the plaintiff having knowledge thereof, not only because its managers and agents are aware of it but also because of the sight of the tracks and railway laid down over the property more than

twenty years ago, for which reason the plaintiff has no status as third person;

That on June 20, 1930, Isidoro Maisonet, then co-owner of the property described in the complaint, mortgaged his interest in the property in favor of the plaintiff to guarantee the payment of one thousand five hundred dollars, plaintiff being aware of the existence of the easement at the time of the execution of the mortgage;

That in an auction held at the Tax Collector's office in Barceloneta on January 27, 1933, the aforesaid property was sold to José E. Díaz, who has always been the plaintiff's attorney, for the sum of fifty-four dollars and forty-six cents, and the fact was notified to Félix del Llano, the mortgagee, who is also the manager of the plaintiff partnership, and that he, notwithstanding, made no use of the right of redemption allowing the sale to Díaz to become final; that later Díaz appears selling the farm to Del Llano, and that both Díaz and Del Llano had full knowledge of the servitude created in favor of the defendant more than twenty-five years before and that neither vendor nor purchaser had the status of third persons.

The issue thus joined, the suit came to trial, and was finally decided by opinion and judgment of the District Court of December 23, 1937, as follows:

"Whereas from the evidence it appears that the defendant corporation acquired from Sotero Maisonet, by deed of May 21, 1909, an easement over a 63 cuerdas farm which is described in the complaint, which property was afterwards subject to a tax sale at the Internal Revenue Collector's office and was acquired by José Díaz, who made a transfer to the plaintiff partnership;

"Whereas since May 21, 1909, to the date of the complaint, said right of way has been used and enjoyed and is at present enjoyed, without interruption, by the plaintiff with a fixed railway embedded in said farm in an obvious manner, over which trains of the aforesaid corporation pass, in the conduct of its business;

"Whereas, albeit the deed of easement was not recorded at the time of the tax sale to José Díaz nor at the date of transfer by the

latter to the plaintiff, it appears, nevertheless, from the Registry certificate introduced in evidence by the defendant that it was never notified of said sale, and even if it was, the servitude which because of its nature is a special lien not removable from the land, did not become extinct by the sale made by the tax collector, nor can the plaintiff be considered a third person to deny it, because of the public and apparent character of the lien, imposed by public deed upon the property acquired by him previous to his purchase;

"Whereas, plaintiff did not allege or prove anything as to the nullity of defendant's title, and the points now raised in the brief as to alleged defects in the deed of servitude are out of order, no motive appearing from the face of the document to declare it null and void;

"Therefore, the complaint is dismissed with costs to the plaintiff including one hundred dollars for attorney's fees."

Feeling aggrieved, plaintiff filed this appeal. It charges four errors to the lower court, committed, 1, in admitting in evidence the deed of May 21, 1909, executed before the Notary Public E. Fernández Vanga, 2, in considering said deed sufficient title to acquire the servitude in issue, 3, in not holding that the tax sale certificate issued by the Collector of Barceloneta constitutes absolute title to the property aforesaid, free of encumbrances, and 4, in imposing payment of attorney's fees upon the plaintiff.

 The first two errors are discussed jointly in the brief. We will follow the same procedure.

When the deed creating the servitude in issue was offered by defendant, plaintiff objected in the first place because the deed had not been recorded in the Registry, in second place, because defendant had not accepted the deed, and in third place, because the notary merely affirmed having put his sign on the document.

The court admitted the document overruling the objection for the following reasons:

". . . . As to the first ground the court believes it goes to the appraisal of the evidence and not its admissibility. As to the second reason, the court believes that, it being a document executed in favor of the Plazuela Sugar Co., it could be executed without the need that;

an officer of the corporation be present at the time of execution, and as to the third ground, the court finds it says, '*signado*' and then there are two lines and then it says, E. Fernández Vanga. The court construes that the words E. Fernández Vangas are equivalent to the signature and the word '*signado*' means that the notary made his sign on the deed."

Arguing the first ground of his objection, appellant cites Article 389 of the Mortgage Law, which provides:

"After this law shall go into effect, no document or instrument which has not been recorded in the registry whereby rights subject to record under said law, are constituted, transferred, acknowledged, modified, or discharged, shall be admitted in ordinary or special courts, or tribunals, in council or in the offices of the Government, if the purpose of the presentation should be to enforce to the prejudice of a third person a right which should have been recorded.

"Notwithstanding the provisions of the foregoing article, an unrecorded document which should have been recorded may be admitted to the prejudice of a third person, if the only purpose of the presentation shall be to corroborate a subsequent instrument which may have been recorded.

"Such an instrument may also be admitted to record when presented for the purpose of securing the annulment and consequent cancellation of a record which prevents the record thereof."

Under the attending circumstances, the district court did not err in admitting in evidence the document notwithstanding its not being registered, since those circumstances tended to show that plantiff did not appear in the role of third person according to what was held by this Court in *Colón* v. *Plazuela Sugar Co.*, 47 P.R.R. 827, applying the Spanish and American jurisprudence.

It did not err either in overruling the objection based on the lack of acceptance of the deed by the Plazuela Sugar Company.

From the deed it follows that before the notary appeared in person, the owners of the farm upon which the servitude was imposed, as party of the first part, and as party of the second part, Julio Rodríguez Espino, as Railway Super-

intendent of the Plazuela Sugar Company. It was not shown that the latter impugned the acts of its *soi disant* representative; on the contrary, what the record shows is that it ratified them; and this being so, the court would have gone against the facts if it had sustained plaintiff's objection.

█ And finally the court did not err, either, in construing the document as evidencing the existence of the notary's signature, by expressing that his name was stated thereof. And well can this interpretation be extended to say that the name includes signature and rubric.

█ Since the notary affixed his name, signature, rubric and sign on the document, which are the requirements of law, the document is valid; and being valid, it is sufficient title for the constitution of the servitude, the existence of which the plaintiff denies, as can be seen from the provisions of the third and fourth Sections of the contract, to wit:

"Third.—That Tomás Rosado and Sotero Maisonet, with the consent of his wife, one of the appearing parties, which I the notary certify was given to him, have agreed with Julio Rodríguez y Espino in his representative capacity, to authorize the 'Plazuela Sugar Company' to lay fixed iron tracks for the use of its engines and wagons for all its needs and to carry out the agreement they authorize the Plazuela Sugar Co. to lay on the described properties fixed iron tracks for the use of railroads, and for said use and for the period of time that the Plazuela may wish to use it, a strip of land is given in said properties along their length and of a minimum width of five meters; the Plazuela Sugar Company is also hereby authorized to carry out the necessary work on said farms for the installation, exploiting and maintenance of said track."

█ The question raised in the third assignment of error was decided against the appellant by this Court in the cited case of *Colón* v. *Plazuela Sugar Co., supra.*

The plaintiff's pretension is that as her predecessor in title acquired the farm involved at a sale held by the collector for taxes and as said collector issued a certificate that the property was free and clear of all liens, which was recorded in the registry, the easement was extinguished.

Leaving to one side the circumstances attending said acquisition and the later sale, and going directly to the fundamental question raised, we shall say that the easement was not extinguished.

In the opinion of the Court written by its Associate Justice Mr. Córdova Dávila in the said case of *Colón* v. *Plazuela Sugar Co., supra,* to that effect the following is said:

"It is said in the tenth and eleventh assignments of error, that the lower court erred in holding that Plazuela Sugar Company should have been notified of the sale made by the People of Puerto Rico, and in declaring that the words 'free from all mortgages, liens or encumbrances', used in Section 347 of the Political Code, do not include servitudes. With respect to this last point, the lower court expressed itself thus:

" '. . . we think that the words *liens or encumbrances,* as used in this law, rather refer to debts of all kinds with which the property may be burdened, *e. g.,* mortgages, attachments and others of like character, than to tangible real charges, such as servitudes. The former are easy to extinguish, since they do not affect the estate directly; by the mere payment thereof they are cancelled. Such is not the case as regards the latter, because servitudes are inseparable from the tenement to which they actively or pasively belong. Section 470 of the Civil Code (1930 Ed.). It is also provided by Section 471 that servitudes are indivisible, and when the servient tenement is divided among two or more persons, the servitude is not modified and each of them shall be subject to the servitudes in part corresponding to him.'

"The decisions of the American courts are not in accord as to what becomes of a servitude when real property is sold for the payment of taxes. Some courts hold that the servitudes becomes extinguished while others, which constitute the majority, maintain a contrary view. The Court of Appeals of New York, in the case of *Tax Lien Co.* v. *Schultze,* 213 N. Y. 9, said:

" 'When an easement is carved out of one property for the benefit of another the market value of the servient estate is thereby lessened, and that of the dominant increased practically by just the value of the easement; the respective tenements should therefore be assessed accordingly. (Citing cases.)

" 'The assessment of the lot described in the judgment did not include the easements appurtenant to the adjoining real property.

The assessment of the servient estate was subject to the easements included in the assessment of the dominant estate. As a necessary consequence it has been held that on the foreclosure of a tax lien and a sale of the premises pursuant to Sections 1035–1039 of the Greater New York charter, private easements of light, air and access of adjoining owners over the land sold are not extinguished. If property rights which are excluded from an assessment are sold or extinguished by a tax sale, there would be a taking of property without due process of law. (*Jackson* v. *Smith,* 153 App. Div. 724; affd. on opinion below by decision handed down herewith, 213 N.Y. 630.)'

"This seems to be the more correct view and the one prevailing among the courts which hold that the servitude subsists when the property is sold for the payment of taxes. If a property is subject to a servitude, it is natural that its value should be diminished by reason of the change existing upon it; likewise the value of the dominant state, which receives the benefit of the servitude should increase.

"In the case of *Blenis* v. *Utica Knitting Co.,* 149 App. Div. 936, affirmed by the Court of Appeals of New York, the court expressed itself as follows:

" 'The statutes relating to tax sales in the county of Oneida, which provide that the purchaser at such sales obtains an absolute title free from all incumbrances, cannot, in my opinion, go further than to divest the purchaser with the title that the owner of the property had, free from liens by the way of incumbrances placed thereon. In other words, it cannot divest a party, situated as the plaintiff is here, from a property right, such as a servitude or easement lawfully acquired prior to the levying of the tax under which the sale was made; and this, especially, when he was not made a party to the proceeding.'

"We think with the lower court that the title acquired by the plaintiff by virtue of the sale of the property made by the People of Puerto Rico, does not release said property from the servitude which exists thereon." 47 P.R.R. 827, 837–839.

█ Having reached the stated conclusions and as we have not been convinced that the court abused its discretion in ordering the plaintiff to pay attorney's fees of the defendant and assessing them at one hundred dollars, we must affirm the judgment appealed from.

Mr. Justice Wolf dissented.